UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CESAR MATEO,

                                        Plaintiff,

        v.

MASON DAWN, Family Services
Coordinator, CHERYL MORRIS, Director of
Ministerial Family and Volunteer Services,
and JEAN KING, Deputy Superintendent for
Programs, all in their personal and individual
capacities,

                                        Defendants.

---

No. 14-CV-2620 (KMK)

OPINION & ORDER

Appearances:

Cesar Mateo
Woodbourne, NY
*Pro Se Plaintiff*

Kruti D. Dharia, Esq.
Jeb Harben, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Cesar Mateo ("Plaintiff"), proceeding pro se, filed the instant Second Amended

Complaint (the "SAC") against Defendants Dawn Mason, Cheryl Morris, and Jean King

(collectively, "Defendants"), alleging that Defendants violated his rights under the Equal

Protection Clause by failing to properly process his lawfully obtained marriage license and by

disallowing him enrollment in the Family Reunion Program (the "FRP").[1]  (*See* Second Am. Compl. (Dkt. No. 35).)  Defendants bring this Motion for Judgment on the Pleadings (the "Motion") pursuant to Federal Rule of Civil Procedure 12(c).  (*See* First Mot. To Dismiss the Second Am. Compl. (Dkt. No. 61).)  For the reasons below, the Court grants the Motion and dismisses the SAC with prejudice.

## I.  Background

### A.  Factual Allegations

The following facts are based on the allegations in the SAC, which are taken as true for purposes of the Motion.

On June 16, 2012, Plaintiff, while incarcerated at Sing Sing Correctional Facility, and his then-fiancé attended a marriage ceremony organized by Defendant Dawn Mason ("Mason"). (*See* Second Am. Compl. ¶¶ 9, 13.)  Plaintiff and his fiancé presented a marriage license and obtained the signatures of all necessary parties.  (*See id.* ¶¶ 10, 13.)  While the other inmates participating in the ceremony had obtained their marriage licenses from the Ossining Town Clerk (where Sing Sing Correctional Facility is located), Plaintiff and his fiancé obtained their marriage license from the New York City Marriage Bureau.  (*See id.* ¶¶ 10, 11.)  At the end of the marriage ceremony, Mason collected the completed marriage licenses to be sent to the town clerk so that marriage certificates could be issued.  (*See id.* ¶ 16.)  Plaintiff and his fiancé informed Mason that their marriage license would need to be sent to the New York City Marriage Bureau, and their marriage license contained instructions on the back to the same

---

[1] The SAC lists the first Defendant as "Mason Dawn," (*see* Second Am. Compl. (Dkt. No. 35)), but Defendants refer to her as "Dawn Mason," (*see* Defs.' Mem. in Supp. of Defs.' Mot. To Dismiss (Dkt. No. 62)), and Plaintiff appears to adopt that nomenclature, (*see* Pl.'s Affirmation in Opp'n to Defs.' Mot. To Dismiss (Dkt. No. 64)).  The Court will do the same.

effect.  (*See id.* ¶ 15.)  Mason, however, did not send Plaintiff's signed marriage license to the New York City Marriage Bureau, but instead sent it to the Ossining Town Clerk along with the rest of the marriage licenses.  (*See id.* ¶ 17.)  Shortly thereafter, the Ossining Town Clerk returned Plaintiff's marriage license to Mason, saying it was not valid.  (*See id.* ¶ 18.)  Mason returned the marriage license to Plaintiff's fiancé and attached the correspondence from the Ossining Town Clerk indicating that the license was not valid.  (*See id.*)  Mason also met with Plaintiff on one occasion and verified that the marriage license had been mailed back to Plaintiff's fiancé and that she would need to contact the New York City Marriage Bureau.  (*See id.* ¶ 21.)  About two months later, Plaintiff learned that the other inmates who had participated in the marriage ceremony had received their marriage certificates from the Ossining Town Clerk.  (*See id.* ¶ 20.)  Sometime in 2012, Plaintiff's fiancé obtained a marriage certificate from the New York City Marriage Bureau certifying that Plaintiff and his wife were married on June 16, 2012.  (*See id.* ¶ 22.)  Plaintiff alleges that this course of conduct violated Plaintiff's rights under the Equal Protection Clause because Mason failed to return Plaintiff's marriage license to the issuing agency, as she had done for his peers.  (*See id.* ¶ 24.)

In October 2012, Plaintiff was transferred to Woodbourne Correctional Facility.  (*See id.* ¶ 25.)  In January 2013, he applied to participate in the FRP, which would allow him to consummate his marriage and visit with his relatives, and indicated on the FRP application that he was married.  (*See id.* ¶ 25; *see also id.* at unnumbered 20.)  Plaintiff's application was denied in May 2013 on the grounds that he had not completed a substance abuse program.  (*See id.* ¶ 27.)  Plaintiff filed an appeal of the denial of his FRP application, alleging that his peers were admitted to the FRP while they were on the waiting list for the substance abuse program, but before they completed or were enrolled in the program.  (*See id.* ¶ 31; *see also id.* ¶ 29.)  In

January 2014, Defendant Cheryl Morris ("Morris") upheld the denial of Plaintiff's FRP application on the ground that he had misrepresented his marriage status.  (*See id.* ¶ 31; *see also id.* at unnumbered 26.)  Plaintiff alleges that Morris never requested a copy of his marriage certificate before determining that Plaintiff had falsely represented his marriage status.  (*See id.* ¶ 33.)  Plaintiff alleges that this conduct violated his rights under the Equal Protection Clause because other inmates were requested to produce a marriage certificate after applying for the FRP, and Morris treated Plaintiff differently in denying him the opportunity to consummate his marriage and visit his relatives.  (*See id.*)

On March 14, 2014, Plaintiff obtained a copy of his marriage certificate from the New York City Marriage Bureau.  (*See id.* ¶ 37; *see also id.* at unnumbered 21.)  He included this certificate in his new application to the FRP, submitted on March 18, 2014.  (*See id.* ¶¶ 36–37; *see also id.* at unnumbered 27.)  Defendant Jean King ("King") responded to Plaintiff's application shortly thereafter, saying that Morris had already determined that Plaintiff's marriage license was invalid and that King was "in no way able to supersede that determination."  (*See id.* ¶¶ 38–39; *see also id.* at unnumbered at 23.)  Plaintiff alleges that this conduct violated his rights under the Equal Protection Clause because King allowed similarly situated couples with valid marriage certificates to participate in the FRP.  (*See id.* ¶ 41.)

B.  Procedural History

In his original complaint (the "Original Complaint"), filed on April 11, 2014, Plaintiff brought claims against Mason, Morris, and King, as well as Mary Ann Robert (the Ossining Town Clerk) and Jeff McKoy (the Deputy Commissioner of Program Services), alleging due process and equal protection violations arising from the same conduct identified in the SAC. (*See* Compl. (Dkt. No. 2).)  Then-Chief Judge Loretta A. Preska issued an Order to Amend on

May 13, 2014 (the "Order to Amend"), dismissing Plaintiff's due process claims against Mason

and Mary Ann Robert for failing to forward his marriage license to the New York City Marriage

Bureau, dismissing Plaintiff's due process and equal protection claims against the remaining

defendants for rejecting Plaintiff's first FRP application, and instructing Plaintiff to amend his

complaint should he wish to include a claim under the Equal Protection Clause relating to the

denial of his second FRP application.  (*See* Order to Amend (Dkt. No. 5).)

On June 9, 2014, Plaintiff filed his amended complaint, naming only King as a defendant

and alleging that King violated his rights under the Equal Protection Clause in denying his

second FRP application.  (*See* Am. Compl. (Dkt. No. 7).)  Plaintiff also stated his belief that the

difference in treatment arose from his history of filing lawsuits against officers of the

correctional institutions where he has been housed.  (*See id.* ¶ 23.)  Following execution of

service on December 9, 2014, (*see* Marshal's Process Receipt & Return of Service Executed

(Dkt. No. 17)), Plaintiff filed a Motion for Preliminary Injunction, (*see* Pl.'s Mot. for Prelim. Inj.

(Dkt. No. 19)).  The injunction was denied as moot after King's counsel indicated that Plaintiff's

marriage had been recognized by the New York State Department of Corrections and

Community Supervision ("DOCCS").  (*See* Dkt. No. 28; *see also* Decl. of Robert F.

Cunningham in Opp. to Pl.'s Mot. for a Prelim. Inj. (Dkt. No. 26).)  Following a conference with

the Court, Plaintiff filed the SAC on May 14, 2015.  (*See* Dkt. No. 35.)  Defendants thereafter

moved under Federal Rule of Civil Procedure 12(c) for a judgment on the pleadings, (*see* Dkt.

No. 61), arguing that Plaintiff's claims against Mason and Morris are barred by the Order to

Amend, that Plaintiff fails to state a claim upon which relief can be granted, and that Defendants

are protected by qualified immunity, (*see* Defs.' Mem. of Law in Supp. of Defs.' Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 62)).[2]

## II.  Discussion

### A.  Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  "[T]he standards for dismissal pursuant to Rule 12(c) are the same as for a dismissal pursuant to Rule 12(b)(6)."  *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 324 (2d Cir. 2011).  To survive a motion to dismiss under Rule 12(c), therefore, "a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014).  In reviewing a complaint, the Court "accept[s] all factual allegations as true and draw[s] every reasonable inference from those facts in the plaintiff's favor."  *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) (internal quotation marks omitted).  Moreover, along with the complaint itself, the Court "may consider . . . any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (internal quotation marks omitted).

---

[2] Although motions under Federal Rule of Civil Procedure 12(c) are termed "Motion[s] for Judgment on the Pleadings," *see* Fed. R. Civ. P. 12(c), Defendants have titled their moving papers "Motion To Dismiss." (*see* Dkt Nos. 61, 62, 65).  This imprecision in terminology is immaterial for purposes of resolving the Motion.

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss," and by extension a Rule 12(c) motion for judgment on the pleadings, "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted). Instead, the Supreme Court has emphasized that the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))). Where, as here, the complaint was filed pro se, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted).

B.  Analysis

    1.  Effect of the Order to Amend

Defendants contend that in the Order to Amend, Judge Preska dismissed all claims against Mason and Morris, and granted Plaintiff leave to amend the Original Complaint only with respect to his allegations under the Equal Protection Clause related to the denial of his second FRP application.  (*See* Defs.' Mem. 6–7.)  Defendants argue that, accordingly, Plaintiff's claims against Mason and Morris, which were removed in the First Amended Complaint but revived in the SAC, should be dismissed.  (*See id.*)

In the Order to Amend, Judge Preska dismissed Plaintiff's claim under the Due Process Clause regarding the failure of Mason and the Ossining Town Clerk to forward his marriage license to the New York City Marriage Bureau.  (*See* Order to Amend 4–5.)  Plaintiff had not alleged, and thus Judge Preska did not address, a claim against Mason under the Equal Protection Clause.  In the SAC, by contrast, Plaintiff alleges that Mason "treated [him] differently from [his] peer inmates who obtained their marriage certificate[s] because Mason return[ed] their marriage license[s] to the[] issuing agency."  (Second Am. Compl. ¶ 24.)  And Plaintiff makes clear in the SAC that the basis for his claims is the Equal Protection Clause.  (*See id.* ¶ 5.) Therefore, Defendants are incorrect in contending that the claim against Mason under the Equal Protection Clause has been dismissed.

Less clear is whether Plaintiff was permitted to amend his complaint to include an equal protection claim against Mason given the limited scope of the Order to Amend.  However, because the Court concludes below that Plaintiff has not stated a claim against Mason under the Equal Protection Clause, the Court declines to consider whether Plaintiff's inclusion of the claim in the SAC was impermissible.

Defendants are correct, however, that Plaintiff's equal protection claim against Morris should be dismissed.  In the Order to Amend, Judge Preska held that "Plaintiff . . . fail[ed] to state a claim that the denial of participation in the FRP violates his right to [e]qual [p]rotection." (Order to Amend 5.)  Judge Preska pointed out that "Plaintiff ha[d] not alleged that his [first] application was denied because of his membership in a protected class, and there is no fundamental right to participate in FRP," (*id.*), and went on to hold that Plaintiff could not sustain a "class-of-one" equal protection claim because he did "not allege that he was treated differently from similarly situated prisoners who were unable to document a legal marriage," (*id.* at 6).  Judge Preska concluded that Plaintiff had failed "to state an [e]qual [p]rotection claim based on the denial of his first FRP application."  (*Id.* at 6–7.)  This claim has thus already been dismissed.

Even assuming Plaintiff was permitted to amend his complaint with regard to his equal protection claim against Morris, Judge Preska's finding that Plaintiff failed to state a claim is the law of the case and informs the outcome here.  *See Fermin v. United States*, 859 F. Supp. 2d 590, 600 n.12 (S.D.N.Y. 2012) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009))); *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) ("Under the law of the case doctrine, 'a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'" (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991))), *aff'd*, 374 F. App'x 71 (2d Cir. 2010). Although Plaintiff has added more detail to his complaint, he has not alleged additional facts that would persuade this Court to veer from Judge Preska's determination that Plaintiff has failed to

state an equal protection claim against Morris.  (*Compare* Second Am. Compl. ¶¶ 26–34, *with* Compl. ¶¶ 26–33.)  There are accordingly no grounds to revisit Judge Preska's determination, and Plaintiff's claim against Morris should be dismissed.

However, Judge Preska's holding was limited only to the first FRP application.  She gave Plaintiff leave to file an amended complaint related to the second FRP application.  (*See* Order to Amend 7.)  Accordingly, Plaintiff's claims against King relating to the second FRP application are properly before the Court and will be addressed below.

### 2.  Equal Protection Claims

Defendants next contend that Plaintiff fails to state a claim upon which relief can be granted.  (*See* Defs.' Mem. 8–10.)  The SAC purports to make claims under the Equal Protection Clause, and the Court will construe Plaintiff's pleadings accordingly.

The Equal Protection Clause requires the government to treat all similarly situated persons alike.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  While the Equal Protection Clause is typically invoked to bring lawsuits claiming discrimination based on membership in a protected class, where a plaintiff does not allege membership in a protected class, he may still prevail on a "class-of-one" theory of equal protection.  *See Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (per curiam).  A class-of-one claim arises when a plaintiff claims that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In order to succeed on such a claim, the plaintiff must establish that:

(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on

the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Neilson*, 409 F.3d at 104). Class-of-one plaintiffs must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation marks omitted). "Because of the particular posture of a 'class of one' claim, the comparator's circumstances must be 'prima facie identical.'" *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (quoting *Neilson*, 409 F.3d at 105). The comparison to similarly situated individuals should "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate government policy that an improper purpose—whether personal or otherwise—is all but certain." *Neilson*, 409 F.3d at 105. "It is well established that this pleading standard is demanding." *Hampshire Recreation, LLC v. Village of Mamaroneck*, No. 14-CV-7228, 2016 WL 1181727, at *6 (S.D.N.Y. Mar. 25, 2016) (internal quotation marks omitted).

Plaintiff has not adequately alleged a class-of-one claim with respect to Mason because he has not alleged that any other inmates who obtained marriage licenses from New York City were treated differently. Plaintiff alleges, in fact, that all of his peer inmates obtained their marriage licenses from the Ossining Town Clerk, (*see* Second Am. Compl. ¶ 11), and that Mason mailed all of the marriage licenses to the Ossining Town Clerk, (*see id.* ¶ 16). Plaintiff attempts to identify a broader class of comparators, alleging that Mason returned the marriage licenses of his peer inmates "to the[] issuing agency where they purchased them," but failed to do so for Plaintiff. (*See id.* ¶ 17.) But plaintiffs seeking to make a class-of-one claim must show "an

extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston*, 610 F.3d at 59 (internal quotation marks omitted).  Plaintiff's comparison to his peer inmates is insufficiently specific; he does not allege that any of his peers obtained marriage licenses from anywhere other than Ossining, and thus the circumstances of Plaintiff and his peers are not "prima facie identical."  *Mosdos*, 815 F. Supp. 2d at 693 (internal quotation marks omitted); *see also MB v. Islip Sch. Dist.*, No. 14-CV-4670, 2015 WL 3756875, at *10 (E.D.N.Y. June 16, 2015) ("[The] [p]laintiffs' conclusory statement that [the comparator] is . . . similarly situated to [the claimant], without any supporting facts to suggest an extremely high degree of similarity between [the two] is insufficient to establish that no rational person could regard [the claimant's] circumstances to differ from those of [the comparator] to a degree that would justify the differential treatment." (alteration and internal quotation marks omitted)). Moreover, as Plaintiff admits, (*see* Second Am. Compl. ¶ 16), and as the relevant DOCCS Directive provides, *see* New York State DOCCS Directive 4201 (Mar. 15, 2012), http://www.doccs.ny.gov/Directives/4201.pdf, Mason was under no obligation to accommodate Plaintiff's desire to have a marriage certificate issued by the New York City Marriage Bureau.[3] If anything, Mason's conduct in both mailing the marriage license to Plaintiff's fiancé and meeting with Plaintiff to discuss the next necessary steps, (*see* Second Am. Compl. ¶¶ 19, 21), evinced a genuine effort to assist Plaintiff in finalizing his marriage.  That Mason declined to take the additional step of sending the marriage license to the New York City Marriage Bureau

---

[3] That directive provides that "[t]he Offender Rehabilitation Coordinator shall conduct an initial interview with the inmate to explain the entire marriage procedure emphasizing that while [DOCCS] will assist the inmate, the primary responsibility for making all arrangements and securing the necessary documents rests with the inmate and the intended spouse."  New York State DOCCS Directive 4201, ¶ IV.B.1 (Mar. 15, 2012), http://www.doccs.ny.gov/Directives/4201.pdf.

herself, a service she provided for no other inmate, does not suffice to establish a class-of-one equal protection claim.

Nor has Plaintiff stated a class-of-one equal protection claim against King.  As Defendants note, (Defs.' Mem. 9–10), there is an initial question of whether class-of-one equal protection claims alleging differential treatment resulting from discretionary state action are viable after *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), and *Analytical Diagnostic*, 626 F.3d 135.  In *Engquist*, the Supreme Court noted that "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments."  553 U.S. at 603.  "In such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted."  *Id.* (internal quotation marks omitted).  The Court went on to say that this principle applied "clearly in the employment context," and therefore held that "the class-of-one theory of equal protection . . . is simply a poor fit in the public employment context."  *Id.* at 604–05.  The Court concluded that "the class-of-one theory of equal protection has no application in the public employment context."  *Id.* at 607.

Shortly after *Engquist* was decided, some courts in the Second Circuit interpreted *Engquist* to hold that class-of-one equal protection claims were precluded for any government actions that were discretionary, regardless of whether the issue involved public employment. *See, e.g.*, *Catcove Corp. v. Heaney*, 685 F. Supp. 2d 328, 333 (E.D.N.Y. 2010) ("[P]ost *Engquist*, a plaintiff who proceeds on a class of one claim must allege that the differential treatment resulted from non-discretionary state action." (internal quotation marks omitted)); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 495 (E.D.N.Y. 2009) (noting that *Engquist*

"appears to foreclose as a matter of law a 'class[]of[]one' claim to the discretionary decisions" made by school personnel), *aff'd*, 623 F.3d 71 (2d Cir. 2010); *Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 245 (S.D.N.Y. 2008) ("[T]he Supreme Court . . . limit[ed] class of one claims in contexts characterized by individualized and subjective determinations where allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." (internal quotation marks omitted)). But then the Second Circuit decided *Analytical Diagnostic* and held that "*Engquist* does not bar all class-of-one claims involving discretionary state action." 626 F.3d at 142. The court highlighted the distinction in *Engquist* between "the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage its internal operations." *Id.* (internal quotation marks omitted) (quoting *Engquist*, 553 U.S. at 598). The Second Circuit found persuasive the reasoning of Judge Seybert in the Eastern District of New York, who interpreted *Engquist* to prohibit only those "discretionary decisions . . . that involve discretion that is actually exercised on a day-to-day basis, rather than decisions that are theoretically discretionary but—as a practical matter—actually depend on de facto standards." *Id.* at 141 (internal quotation marks omitted) (quoting *Alfaro v. Labrador*, No. 06-CV-1470, 2009 WL 2525128, at *9 (E.D.N.Y. Aug. 14, 2009)).

The Second Circuit went on to hold that the plaintiff, a private clinical testing laboratory that alleged that the New York Department of Health maliciously subjected the plaintiff to an "intense and unwarranted degree of regulatory scrutiny" during inspections prior to revoking the plaintiff's operating permit, was not barred from bringing a class-of-one equal protection claim. *Id.* at 137–38, 142–43. The court reasoned that the New York Department of Health "[did] not possess unfettered discretion" in revoking or suspending existing operating permits, and that the

agency was required to "operate within the regulatory framework set forth in [New York law]." *Id.* at 142. The court concluded that "[e]specially where the state is exercising its regulatory and licensing power, we are loath to read *Engquist* as broadly as [the] defendants urge." *Id.* at 142– 43. "Accordingly, in the wake of *Analytical Diagnostic*, class-of-one claims are not ipso facto barred simply because the government's conduct was discretionary." *Aliberti v. Town of Brookhaven*, 876 F. Supp. 2d 153, 162 (E.D.N.Y. 2012) (italics omitted).

Since *Analytical Diagnostic*, courts in the Second Circuit have attempted to delineate between those claims prohibited by *Engquist* (and *Analytical Diagnostic*) and those claims left unaffected. *Compare Johnson v. Pallito*, No. 12-CV-138, 2014 WL 2000369, at *3 (D. Vt. Apr. 21, 2014) ("Given that [the plaintiff's] employment in a correctional facility is analogous to the public employment at issue in *Engquist*, the holding of that case controls here and bars [the plaintiff's] class-of-one equal protection claim against [the defendant]."), *adopted by* 2014 WL 1922728 (D. Vt. May 14, 2014), *and Barnes v. Abdullah*, No. 11-CV-8168, 2013 WL 3816586, at *6 (S.D.N.Y. July 22, 2013) (dismissing a class-of-one claim where "the conduct of [the defendants] in deciding which inmates may participate in [drug rehabilitation programs] is more akin to the state acting as a proprietor or employer than as a regulator"), *with Aliberti*, 876 F. Supp. 2d at 163 ("[The] plaintiffs' claim is not barred by *Engquist* because [the] plaintiffs were not government employees and the [defendant] was exercising its regulatory power."), *and Lexjac, LLC v. Incorporated Village of Muttontown*, No. 07-CV-4614, 2011 WL 1059122, at *7 n.5 (E.D.N.Y. Mar. 18, 2011) ("Here, too, the [d]efendant did not manage its internal relations so much as it exercised its regulatory, plat-approving power. Thus, to the extent that the *Analytical Diagnostic* . . . court extended *Eng[q]uist* outside of the employment context, that ruling does not apply here."). In *Barnes*, the court held that a prisoner could not bring a class-of-one claim

based on his removal from a drug rehabilitation program.  *See* 2013 WL 3816586, at *1, *6.

Finding that "the alleged differential treatment . . . resulted from state action that is within the

state's discretion," *id.* at *6, the court reasoned that "prison officials are vested with considerable

discretion concerning inmates' participation in prison programs such as [the program at issue],"

and that "the conduct of prison officials in deciding which inmates may participate in such

programs is more akin to the state acting as a proprietor or employer than as a regulator," *id.*

The court therefore concluded that the plaintiff was "unable to assert a class-of-one [e]qual

[p]rotection claim to challenge his removal from the [drug rehabilitation] program."  *Id.*

   While the reasoning in *Barnes* is persuasive, the context here yields a different result.  In

contrast to *Barnes*, whatever discretion prison officials may have exercised in denying Plaintiff's

first application to the FRP, King made clear in her denial of Plaintiff's application that she was

not exercising her discretion, but, in fact, was "in no way able to supersede [Mason's]

determination."  (Second Am. Compl. at unnumbered 23.)  Thus, King did not enjoy

"considerable discretion," but instead was constrained by the procedures of which Plaintiff now

complains.  And even if admission to the FRP is "theoretically discretionary," "as a practical

matter," admission in this circumstance was not a matter of discretion.  *Analytical Diagnostic*,

626 F.3d at 141 (internal quotation marks omitted).  Because King did not "possess unfettered

discretion," *id.* at 142, *Engquist* does not bar Plaintiff's class-of-one equal protection claim

against King related to her denial of Plaintiff's second application to the FRP.[4]

   However, Plaintiff has again failed to identify similarly situated comparators sufficient to

plead a class-of-one claim under the Equal Protection Clause.  Plaintiff has not identified any

---

[4] By contrast, Morris's decision to deny Plaintiff's first FRP application was arguably
discretionary, and thus may be barred by *Engquist* and *Analytical Diagnostic*.  However, as set
forth above, that claim has already been dismissed by Judge Preska.  (*See* Order to Amend 6–7).

inmates whose applications were denied by Morris and subsequently approved by King.  Plaintiff

only argues that King treated his peers differently in "allow[ing] them to participate in the FRP,

process[ing] their application[s] and . . . investigating their process and marriage legality."  (Pl.'s

Affirmation in Opp. to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") ¶ 9 (Dkt No. 64).)  As above, this

generalized assertion of unequal treatment falls short of identifying "extremely" similar

comparators as required by the law of the Second Circuit.  *See Ruston*, 610 F.3d at 59 (internal

quotation marks omitted).  Plaintiff has therefore failed to state a claim against King under the

Equal Protection Clause.

### 3.  Retaliation Claim

In his opposition papers, Plaintiff suggests that the motivation for Defendants' alleged

misconduct is Plaintiff's "history of filing complaints in court against their fellow employees."

(Pl.'s Opp'n ¶ 10.)  Although this allegation of retaliation was raised in Plaintiff's First Amended

Complaint, (*see* Am. Compl. ¶ 23), Plaintiff removed it in the SAC, (*see generally* Second Am.

Compl.).  As Defendants point out, "a party is not entitled to amend its complaint through

statements made in motion papers."  *Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 477

n.88 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Wright v. Ernst & Young LLP*,

152 F.3d 169, 178 (2d Cir. 1998)); *see also LaFlamme v. Societe Air Fr.*, 702 F. Supp. 2d 136,

140 n.5 (E.D.N.Y. 2010) ("[T]he court declines to consider those documents submitted by [the]

plaintiffs to support allegations first raised in their motion papers and found nowhere in the

[c]omplaint.").  Application of that rule is particularly apt here, where Plaintiff removed the

allegation from an earlier amended complaint.  And while Plaintiff is permitted to amend his

complaint once as a matter of right, *see* Fed R. Civ. P. 15(a)(1), and any time thereafter with

leave of the court, *see id.* at 15(a)(2), Plaintiff has already amended his complaint twice, and his

voluntary removal of the retaliation claim in the SAC militates against granting leave yet again to include allegations already raised and withdrawn.

Even were the Court to entertain, however, Plaintiff's scattered allusions to a retaliatory motive on the part of Defendants, nothing in the SAC or in Plaintiff's opposition papers suffices to state a claim for retaliatory action in violation of the First Amendment.  In order to survive a motion to dismiss, a plaintiff asserting a First Amendment retaliation claim must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted).  Courts are instructed to "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act."  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted).  Accordingly, First Amendment retaliation claims brought by prisoners must "be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'"  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Plaintiff's filing of lawsuits against prison officials is indisputably a protected First Amendment activity.  *See Espinal*, 558 F.3d at 128–29; *see also Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 4476027, at *4 (S.D.N.Y. July 22, 2015) ("Inmates are . . . protected when they file lawsuits against prison officials."); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (same).  In determining whether an adverse action has been taken against Plaintiff, the Court conducts an objective inquiry, asking whether the alleged conduct "would deter a similarly

18

situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (alteration and internal quotation marks omitted). It is unclear whether Defendants' conduct rises to such a level. Even assuming it does, however, Plaintiff has not alleged sufficient facts showing "a causal connection between the protected conduct and the adverse action." *Espinal*, 558 F.3d at 128 (internal quotation marks omitted).

Plaintiff's history of filing lawsuits against prison officials is well documented. *See, e.g.*, *Mateo v. Bristow*, No. 12-CV-5052, 2015 WL 925933 (S.D.N.Y. Mar. 4, 2015); *Mateo v. Gundrum*, No. 10-CV-1103, 2013 WL 5464722 (N.D.N.Y. Sept. 30, 2013); *Mateo v. O'Connor*, No. 10-CV-8426, 2012 WL 1075830 (S.D.N.Y. Mar. 29, 2012); *Mateo v. Fischer*, 682 F. Supp. 2d 423 (S.D.N.Y. 2010). But none of the Defendants here was named as a defendant in any of those cases, and "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against []other defendant[s]." *Hare v. Hayden*, No. 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim where "the only individual defendants named in the . . . [c]omplaint were Goord, McDermott, and Dirie, none of whom was alleged to have participated in th[e] [retaliatory] event"); *Henson v. Gagnon*, No. 13-CV-590, 2015 WL 9809874, at *12 (N.D.N.Y. Dec. 10, 2015) ("The record is devoid of evidence . . . that supports [the] [p]laintiff's conclusory assertion that [the defendant] planted evidence and issued the [m]isbehavior [r]eport based upon evidence in retaliation for grievances [the] [p]laintiff had filed against other corrections officers."), *adopted by* 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016). Plaintiff's claim is similarly handicapped by its failure to allege or otherwise suggest that Defendants even knew of the complaints filed against other correction officers. *See Wesley v. Kalos*, No. 97-CV-1598, 1997 WL 767557, at *5 (S.D.N.Y. Dec. 11, 1997) ("To establish a claim of retaliatory transfer

requires [the plaintiff], at a minimum, to assert facts to show that the [d]efendants knew of [the plaintiff's] complaints prior to the transfer."); *see also Alston v. Pafumi*, No. 09-CV-1978, 2016 WL 81785, at *7 (D. Conn. Jan. 7, 2016) (granting partial summary judgment where the plaintiff identified "no record evidence from which a reasonable jury could infer that any other defendant was aware of [the plaintiff's] complaint"), *reconsideration denied*, 2016 WL 447423 (D. Conn. Feb. 4, 2016); *Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 774982, at *10 (S.D.N.Y. Feb. 23, 2015) ("Absent evidence that any defendant knew about his . . . grievance, [the plaintiff] has failed to provide any basis to believe that they retaliated against him for a grievance in which they were not named."), *adopted in relevant part by* 2015 WL 4476027 (S.D.N.Y. July 22, 2015).  In light of the absence of any facts suggesting that Defendants were involved in the prior lawsuits, knew of the prior lawsuits, or had any involvement with defendants named in the prior lawsuits, Plaintiff has failed to establish a plausible causal connection between the filing of his prior lawsuits and the allegedly retaliatory actions taken here.  *Cf. Olutosin v. Lee*, No. 14-CV-685, 2016 WL 2899275, at *11 (S.D.N.Y. May 16, 2016) (denying motion to dismiss retaliation claim where adverse actions occurred within ten months of the filing of the first lawsuit, one of the defendants in the prior lawsuit worked closely with named defendants in the current lawsuit, and one unnamed officer made a comment to the plaintiff regarding his earlier lawsuit).  Thus, even construing Plaintiff's filings liberally, Plaintiff has failed to state a claim for retaliatory action in violation of his First Amendment rights.[5]

---

[5] As Plaintiff has failed to state a claim against any of Defendants, the Court declines to address whether Defendants are entitled to qualified immunity.

### 4.  Dismissal With Prejudice

Because this is Plaintiff's third attempt to plead a cause of action against Defendants, the Court dismisses the SAC with prejudice.

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that [s]he has inadequately or inartfully pleaded and that [s]he should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]," "[s]uch a futile request to replead should be denied." *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).  Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013). Courts are especially wary of giving plaintiffs multiple "bites at the apple" where a plaintiff has already been granted leave to amend.  *See Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) ([The] [p]laintiff has already been given one opportunity to amend his complaint . . . , and there is nothing in his second amended complaint suggesting that [he] could do better given another opportunity."); *Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where "[the plaintiff] has already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 F. App'x 31 (2d Cir. 2016); *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the

plaintiff failed to cure the deficiencies identified in his initial complaint despite "being given ample opportunity to do so").

Here, Plaintiff is on his third complaint. The Original Complaint was dismissed on all grounds by Judge Preska, with leave to amend in a limited respect. (*See* Order to Amend.) Plaintiff did so, (*see* Am. Compl.), but after reviewing the grounds for Defendants' proposed Motion To Dismiss, (*see* Letter from Kruti Dharia, Esq., to Court (Feb. 26, 2015) (Dkt. No. 29)), Plaintiff opted to file a third complaint, attempting to cure the deficiencies identified by Defendants, (*see* Second Am. Compl.). At no point in these pleadings has Plaintiff successfully stated a claim for relief. And Plaintiff's failure to do so is not a consequence of inartful pleading or lack of legal acumen; rather, Plaintiff's claims lack substance in the law. Indeed, the SAC is detailed in its factual allegations, and provides documentary support for many of Plaintiff's allegations. There is little question that Plaintiff has presented the Court with all of the facts pertinent to his claims, yet even construing Plaintiff's pleadings liberally, Plaintiff has failed again to state a claim. Accordingly, the dismissal of the SAC is with prejudice.

### III. Conclusion

For the foregoing reasons, the Motion is granted with prejudice. The Clerk of the Court is respectfully requested to terminate the pending Motion (Dkt. No. 61) and close the case.

SO ORDERED.

DATED:     September 23, 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22